PER CURIAM.
The Family Court Steering Committee (committee)[1] has filed a petition with this Court seeking to amend on an emergency basis Florida Family Law Rule of Procedure 12.610, Injunctions for Domestic and Repeat Violence. We have jurisdiction. See art. V, § 2(a), Fla. Const.; Fla. R. Jud. Admin. 2.130(a).
The committee’s charges for 2000-2002 included conducting “an assessment of how courts are handling domestic violence cases and developing] recommendations for model practices for handling these cases in a manner that helps ensure the safety of victims and children.” In re: Family Court Steering Committee, Fla. Admin. Order No. AOSC00-18 (July 13, 2000) (on file with Clerk, Fla. Sup.Ct.). Although certain aspects of this assessment are still under active consideration, the committee states that emergency consideration of the proposed amendments is necessary “to ensure safety and due process for victims, abusers and their children by providing clear, statewide standards for conducting domestic violence injunction hearings.”
The proposals were published in the October 15, 2002, edition of The Florida Bar News. Most comments received were in opposition to the proposed changes, specifically expressing concerns regarding whether assistance being provided by case management personnel who assist the judge with the processing of petitions for domestic violence injunctions would be prohibited under the amended rule.[2] However, prior to oral argument in this case, a mediated agreement on the proposed amendments was worked out between the committee, acting through its chair, Judge Raymond T. McNeal, and those opposed to the amendment, acting through Twentieth Judicial Circuit Judge Hugh Starnes. All representatives of the circuits that had filed comments in opposition agreed with the mediated agreement.[3] Robin Thompson, representing the Florida Coalition Against Domestic Violence (FCADV), objected to any change from the proposed rule that could compromise the fairness and safety of the court process for victims of domestic violence.
PROPOSED AMENDMENTS
The committee first proposes to amend rule 12.610(c)(1)(B), “Permanent Injunc *176 tion,” to change the title of this subdivision to “Final Judgment of Injunction for Protection Against Repeat Violence.” The committee states that it is proposing this separate subdivision because the rest of its proposed changes are not relevant to repeat violence. Further, the committee proposes to amend this subdivision to delete the requirement that a full evidentiary hearing be conducted. As amended, the subdivision only provides that “a hearing” shall be held. The committee states that the qualifying terms “full evidentiary” appeared to cause confusion as to whether the rule required a formal presentation of evidence in instances where the respondent agreed to the rendering of an injunction.
The committee next proposes to add new subdivision (c)(1)(C), “Final Judgment of Injunction for Protection Against Domestic Violence,” to rule 12.610. This new subdivision requires that a hearing be held on the petition for injunction at which the court must make a finding as to whether domestic violence occurred or whether an imminent danger of domestic violence exists. New subdivision (c)(1)(C) provides that if the court determines an injunction will issue, the court shall also rule on the following issues: (1) whether the respondent will have contact with the petitioner, and if so, under what conditions; (2) exclusive use of the parties’ shared residence; (8) temporary custody of minor children; (4) whether temporary visitation will occur and whether it will be supervised; (5) whether temporary child support will be ordered; (6) whether temporary spousal support will be ordered; and (7) such other relief as the court deems necessary for the protection of the petitioner. The new commentary to subdivision (c)(1)(C) states that the judge must make these rulings after deciding to issue an injunction but before referring parties to mediation to ensure that issues involving safety are decided by the judge and are not left to the parties to resolve.
New subdivision (c)(1)(C) next provides that the court may, with the consent of the parties, refer the parties to mediation by a certified family mediator to attempt to resolve the details as to the above rulings. The commentary to the new subdivision provides that prior to ordering the parties to mediate, the court should consider risk factors in the case and the suitability of mediation. According to the commentary, the court should not refer the case to mediation if there exists (1) a degree of past violence, (2) a potential for future lethality, or (3) other factors that would compromise the mediation. The rule provides that mediation by a certified family mediator “shall be the only alternative dispute resolution process offered by the court.” Under the agreement entered into by Judges McNeal and Starnes, the new commentary also provides that court staff may engage in case management services:
In performing case management, court staff may interview the parties separately to identify and clarify their positions. Court staff may present this information to the court along with a proposed order for the court’s consideration in the hearing required by subdivision (b).[4]
Finally, under new subdivision (c)(1)(C), the court shall review any agreement reached by the parties. If the court approves the agreement, it shall be incorporated into the final judgment. If no agreement is reached, the matters referred will be returned to the court for rulings. Regardless of whether issues are resolved in *177 mediation, the new subdivision provides that a domestic violence injunction will be entered or extended the same day as the hearing on the petition for injunction commences.
ANALYSIS
We agree with and approve the amendments as well as the addition of the language that was agreed upon in the mediated agreement. We address only the portion of the amendment that generated the most controversy: the appropriate use of court staff to assist the court in performing its adjudicative functions.
The responsibilities placed on a judge hearing a petition for domestic violence injunction are awesome, with the safety of the victim being paramount. At the same time, the numbers of civil domestic violence petitions being filed each year and the growth in the filings are dramatic. For example, in 2001-2002 there were 60,-044 domestic violence civil filings and 20,-580 repeat violence filings statewide. Only ten years before in 1991-1992, there were 30,609 domestic violence filings and 9,235 repeat violence filings.[5] In other words, the number of domestic violence civil filings has doubled in a ten-year period, and the number of repeat violence filings has more than doubled, no doubt as a result of increased understanding of the issue of domestic violence.[6]
In 2001, this Court unanimously adopted the recommendations of the committee for a Model Family Court setting forth the necessary components and best practices for administering and adjudicating cases involving children and families. See In re Report of the Family Court Steering Committee, 794 So.2d 518 (Fla.2001). Included in the twelve elements identified as “fun *178 damental to a model family court” we listed:
Case Management — Supervising, coordinating, directing and overseeing the process and progress of a case....
Domestic Violence — Ensuring that cases involving domestic violence are identified and managed in a manner that is organized, timely, and sensitive to the special dynamics involved in these cases.
Id. at 526-27. We unanimously endorsed each of the essential elements, explaining:
Without the necessary support services, the family court will be no more than a division of the circuit court that handles a specified class of cases, and the judicial system will be unable to effectively address the ever-increasing and complex needs of children and families — and the ever-increasing caseloads.
Id. at 527-28. Among the twelve Family Court Guiding Principles endorsed, the following pertain to the issues before us:
7. The court is responsible for managing its cases with due consideration of the needs of the family, the litigants, and the issues presented by the case.
8. There should be a means of differentiating among cases so that judicial resources are conserved and cases are diverted to non-judicial and quasi-judicial personnel for resolution, when appropriate and consistent with the ends of justice.
9. Trial courts must coordinate and maximize court resources and establish linkages with community resources.
Id. at 522.
We conclude that the proposed amendments to rule 12.610 serve the goals of preserving the integrity of domestic violence proceedings and the safety of the victims of domestic violence by ensuring that a judge is actively involved in reaching a final determination in the case, while affording courts the flexibility of utilizing court staff to assist in processing these cases in an efficient manner.
It is clear to us that without the assistance of well-trained staff, the judges assigned to hear domestic violence injunctions would be unable to perform their statutorily mandated responsibilities in a timely, fair, and effective manner. Further, considering the volume and varying nature of the domestic violence petitions, it is clear that no one process can fit all.
We note that although various circuit courts in the State of Florida have been utilizing court staff in the case management process for family cases, until now the circuits have had little guidance as to how such case management should be structured. The uniform procedures set forth in the proposed amendment and the commentary provide the needed guidance for judicial circuits as to the permissible and impermissible activities for court staff to engage in when assisting the court in managing its domestic violence cases. We conclude that the amendments proposed by the committee provide necessary guidelines for those circuits that are already utilizing case management procedures, as well as others that in the future may decide to use these procedures to efficiently, timely, and fairly adjudicate domestic violence cases. As these guidelines are implemented, the use of case management techniques will continue to evolve so that they more efficiently and effectively serve both petitioners and respondents in domestic violence proceedings.
In furtherance of this goal and in accord with the mediated agreement proposed by Judge McNeal and Judge Starnes, we request that the Domestic Violence Subcommittee of the Steering Committee on Families and Children in the Court (1) define appropriate case management techniques for domestic violence cases; and (2) recom *179 mend appropriate training for case managers in domestic violence.[7]
We acknowledge the concern of the committee and FCADV that it is critical that the judicial system be aware of and sensitive to the power imbalance in most abusive relationships, thus requiring active judicial involvement and oversight. Utilizing court personnel will conserve judicial resources and at the same time, it will be the judge who ultimately considers the allegations raised and determines whether or not an injunction will issue. Thus, under the proposed amendment, the judge will remain actively and integrally involved in the injunction process, and will play the crucial role of ensuring the safety of the litigants and protecting the rights of the parties.
The Court wishes to express its sincerest gratitude to the members of the committee for their diligent and dedicated efforts in seeking to ensure safety and due process in domestic violence proceedings. Further, we thank all individuals who filed comments with this Court, especially those who participated in oral argument and provided the Court with additional valuable insight. Finally, we thank Dr. Gregory Firestone for assisting Judge Raymond T. McNeal and Judge Hugh Starnes in reaching a mediated agreement regarding the proposed rule. These efforts demonstrate that mediation and alternative dispute resolution may provide an extremely effective solution to a disputed issue.
Accordingly, we amend Florida Family Law Rule of Procedure 12.610 as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The commentaries are included for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall- become effective immediately.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, CANTERO, and BELL, JJ., concur.
APPENDIX
RULE 12.610. INJUNCTIONS FOR DOMESTIC AND REPEAT VIOLENCE
(a) Application. This rule shall apply only to temporary and permanent injunctions for protection against domestic violence and temporary and permanent injunctions for protection against repeat violence. All other injunctive relief sought in cases to which the Family Law Rules apply shall be governed by Florida Rule of Civil Procedure 1.610.
(b) Petitions.
(1) Requirements for Use.
(A) Domestic Violence. Any person may file a petition for an injunction for protection against domestic violence if they certify under oath that
(i) the party filing the injunction and the party against whom the injunction is sought are spouses, former spouses, persons related by blood or marriage, persons who are presently residing together as if a family or who have resided together in the past as if a family, or persons who have a child in common regardless of whether they have been married or have resided together at any time;
*180 (ii) the party filing the petition was the victim of, or has reasonable cause to believe he or she is in imminent danger of becoming the victim of an assault, aggravated assault, battery, aggravated battery, sexual assault, sexual battery, stalking, aggravated stalking, kidnapping, false imprisonment, or any criminal offense resulting in physical injury or death perpetrated by the party against whom the injunction is sought; and
(iii) the specific facts and circumstances upon the basis of which relief is sought are true.
(B) Repeat Violence. Any person may file a petition for an injunction for protection against repeat violence if they certify under oath that
(i) two incidents of violence, defined as any assault, battery, sexual battery, or stalking, one of which must have occurred within 6 months of the filing of the petition, have been committed by the person against whom the injunction is sought against the petitioner or the petitioner’s immediate family member; and
(ii) the specific facts and circumstances upon the basis of which relief is sought are true.
(2)Service of Petitions.
(A) Domestic Violence. Personal service by a law enforcement agency is required. The clerk of the court shall furnish a copy of the petition for an injunction for protection against domestic violence, financial affidavit (if support is sought), Uniform Child Custody Jurisdiction Act affidavit (if custody is sought), temporary injunction (if one has been entered), and notice of hearing to the appropriate sheriff or law enforcement agency of the county where the respondent resides or can be found for expeditious service of process.
(B) Repeat Violence. Personal service by a law enforcement agency is required. The clerk of the court shall furnish a copy of the petition for an injunction for protection against repeat violence, temporary injunction (if one has been entered), and notice of hearing to the appropriate sheriff or law enforcement agency of the county where the respondent resides or can be found for expeditious service of process.
(C) Additional Documents. Service of pleadings in cases .of domestic or repeat violence other than petitions, supplemental petitions, and orders granting injunctions shall be governed by rule 12.080, except that service of a motion to modify or vacate an injunction should be by notice that is reasonably calculated to apprise the nonmoving party of the pen-dency of the proceedings.
(3) Consideration by Court. Upon the filing of a petition, the court shall set a hearing to be held at the earliest possible time. A denial of a petition for an ex parte injunction shall be by written order noting the legal grounds for denial. When the only ground for denial is no appearance of an immediate and present danger of domestic violence, the court shall set a full hearing on the petition for injunction with notice at the earliest possible time. Nothing herein affects a petitioner’s right to promptly amend any petition, or otherwise be heard in person on any petition consistent with these rules.
(4) Forms.
(A) Provision of Forms. The clerk of the court or family or domestic/repeat violence intake personnel shall provide simplified forms, including instructions for completion, for any person whose circumstances meet the requirements of this rule and shall assist the petitioner in obtaining an injunction for protection *181 against domestic or repeat violence as provided by law.
(B) Confidential Filing of Address. A petitioner’s address may be furnished to the court in a confidential filing separate from a petition or other form if, for safety reasons, a petitioner believes that the address should be concealed. The ultimate determination of a need for confidentiality must be made by the court as provided in Florida Rule of Judicial Administration 2.051.
(c) Orders of Injunction.
(1) Consideration by Court.
(A) Temporary Injunction. For the injunction for protection to be issued ex parte, it must appear to the court that an immediate and present danger of domestic or repeat violence exists. In an ex parte hearing for the purpose of obtaining an ex parte temporary injunction, the court may limit the evidence to the verified pleadings or affidavits for a determination of whether there is an imminent danger that the petitioner will become a victim of domestic or repeat violence. If the respondent appears at the hearing or has received reasonable notice of the hearing, the court may hold a hearing on the petition. If a verified petition and affidavit are amended, the court shall consider the amendments as if originally filed.
(B) Permanent Injunction. — Final Judgment of Injunction for Protection Against Repeat Violence. A full eviden-tiary hearing shall be conducted.
(C) Final Judgment of Injunction for Protection Against Domestic Violence. The court shall conduct a hearing and make a finding of whether domestic violence occurred or whether imminent danger of domestic violence exists. If the court determines that an injunction will be issued, the court shall also rule on the following:
(i) whether the respondent may have any contact with the petitioner, and if so, under what conditions;
(ii) exclusive use of the parties’ shared residence;
(iii) temporary custody of minor children;
(iv) whether temporary visitation will occur and whether it will be supervised;
(v) whether temporary child support will be ordered;
(vi) whether temporary spousal support will be ordered; and
(vii) such other relief as the court deems necessary for the protection of the petitioner.
The court, with the consent of the parties, may refer the parties to mediation by a certified family mediator to attempt to resolve the details as to the above rulings. This mediation shall be the only alternative dispute resolution process offered by the court. Any agreement reached by the parties through mediation shall be reviewed by the court and, if approved, incorporated into the final judgment. If no agreement is reached the matters referred shall be returned to the court for appropriate rulings. Regardless of whether all issues are resolved in mediation, an injunction for protection against domestic violence shall be entered or extended the same day as the hearing on the petition commences.
(2) Issuing of Injunction.
(A) Standardized Forms. The temporary and permanent injunction forms approved by the Florida Supreme Court for repeat and domestic violence injunctions shall be the forms used in the issuance of injunctions under chapters 741 *182 and 784, Florida Statutes. Additional standard provisions, not inconsistent with the standardized portions of those forms, may be added to the special provisions section of the temporary and permanent injunction forms, or at the end of each section to which they apply, on the written approval of the chief judge of the circuit, and upon final review and written approval by the Chief Justice. Copies of such additional standard provisions, once approved by the Chief Justice, shall be sent to the chair of the Family Law Rules Committee of The Florida Bar, the chair of the Family Courts-Steering Committee Steering Committee on Families and Children in the Court, and the chair of The Governor’s Task Force on Domestic and Sexual Violence.
(B) Bond. No bond shall be required by the court for the entry of an injunction for protection against domestic or repeat violence. The clerk of the court shall provide the parties with sufficient certified copies of the order of injunction for service.
(3) Service of Injunctions.
(A) Temporary Injunction. A temporary injunction for protection against domestic or repeat violence must be personally served. When the respondent has been served previously with the temporary injunction and has failed to appear at the initial hearing on the temporary injunction, any subsequent pleadings seeking an extension of time may be served on the respondent by the clerk of the court by certified mail in lieu of personal service by a law enforcement officer. If the temporary injunction was issued after a hearing because the respondent was present at the hearing or had reasonable notice of the hearing, the injunction may be served in the manner provided for a permanent injunction.
(B) Permanent Injunction.
(i) Party Present at Hearing. The parties may acknowledge receipt of the permanent injunction for protection against domestic or repeat violence in writing on the face of the original order. If a party is present at the hearing and that party fails or refuses to acknowledge the receipt of a certified copy of the injunction, the clerk shall cause the order to be served by mailing certified copies of the injunction to the parties who were present at hearing at the last known address of each party. Service by mail is complete upon mailing. When an order is served pursuant to this subdivision, the clerk shall prepare a written certification to be placed in the court file specifying the time, date, and method of service and within 24 hours shall forward a copy of the injunction and the clerk’s affidavit of service to the sheriff with jurisdiction over the residence of the petitioner. This procedure applies to service of orders to modify or vacate injunctions for protection against domestic or repeat violence.
(ii) Party not Present at Hearing. Within 24 hours after the court issues, continues, modifies, or vacates an injunction for protection against domestic or repeat violence, the clerk shall forward a copy of the injunction to the sheriff with jurisdiction over the residence of the petitioner for service.
(4) Duration.
(A) Temporary Injunction. Any temporary injunction shall be effective for a fixed period not to exceed 15 days. A full hearing shall be set for a date no later than the date when the temporary injunction ceases to be effective. The court may grant a continuance of the temporary injunction and of the full hearing for good cause shown by any party, or upon its own motion for good cause, including failure to obtain service.
*183 (B) Permanent Injunction. Any relief granted by an injunction for protection against domestic or repeat violence shall be granted for a fixed period or until further order of court. Such relief may be granted in addition to other civil and criminal remedies. Upon petition of the victim, the court may extend the injunction for successive periods or until further order of court. Broad discretion resides with the court to grant an extension after considering the circumstances. No specific allegations are required.
(5) Enforcement. The court may enforce violations of an injunction for protection against domestic or repeat violence in civil contempt proceedings, which are governed by rule 12.570, or in criminal contempt proceedings, which are governed by Florida Rule of Criminal Procedure 3.840, or, if the violation meets the statutory criteria, it may be prosecuted as a crime under Florida Statutes.
(6) Motion to Modify or Vacate Injunction. The petitioner or respondent may move the court to modify or vacate an injunction at any time. Service of a motion to modify or vacate injunctions shall be governed by subdivision 12.610(b)(2) of this rule. However, for service of a motion to modify to be sufficient if a party is not represented by an attorney, service must be in accord with rule 12.070, or in the alternative, there must be filed in the record proof of receipt of this motion by the nonmoving party personally.
(7) Forms. The clerk of the court or family or domestic/repeat violence intake personnel shall provide simplified forms including instructions for completion, for the persons whose circumstances meet the requirements of this rule and shall assist in the preparation of the affidavit in support of the violation of an order of injunction for protection against domestic or repeat violence.
Commentary
2003 Amendment. This rule was amended to emphasize the importance of judicial involvement in resolving injunction for protection against domestic violence cases and to establish protections if mediation is used. In performing case management, court staff may interview the parties separately to identify and clarify their positions. Court staff may present this information to the court along with a proposed order for the court’s consideration in the hearing required by subdivision (b). The first sentence of (c)(1)(C) contemplates that an injunction will not be entered unless there is a finding that domestic violence occurred or that there is imminent danger of domestic violence. Subdivision (c)(1)(C) also enumerates certain rulings that a judge must make after deciding to issue an injunction and before referring parties to mediation. This is intended to ensure that issues involving safety are decided by the judge and not left to the parties to resolve. The list is not meant to be exhaustive, as indicated by subdivision (c)(l)(C)(vii), which provides for “other relief,” such as retrieval of personal property and referrals to batterers’ intervention programs. The prohibition against use of any “alternative dispute resolution” other than mediation is intended to preclude any court-based process that encourages or facilitates, through mediation or negotiation, agreement as to one dr more issues, but does not preclude the parties through their attorneys from presenting agreements to the court. All agreements must be consistent with this rule regarding findings. Prior to ordering the parties to mediate, the court should consider risk factors in the case and the suitability of the case for mediation. The court should not refer the case to mediation if there has been a high *184 degree of past violence, a potential for future lethality exists, or there are other factors which would compromise the mediation process.
1995 Adoption. A cause of action for an injunction for protection against domestic violence and repeat violence has been created by section 741.30, Florida Statutes (Supp.1994) (modified by chapter 95-195, Laws of Florida), and section 784.046, Florida Statutes (Supp.1994), respectively. This rule implements those provisions and is intended to be consistent with the procedures set out in those provisions except as indicated in this commentary. To the extent a domestic or repeat violence matter becomes criminal or is to be enforced by direct or indirect criminal contempt, the appropriate Florida Rules of Criminal Procedure will apply.
The facts and circumstances to be alleged under subdivision 12.610(b)(1)(A) include those set forth in Florida Supreme Court Approved Family Law Form 12.980(b). An injunction for protection against domestic or repeat violence may be sought whether or not any other cause of action is currently pending between the parties. However, the pendency of any such cause of action must be alleged in the petition. The relief the court may grant in a temporary or permanent injunction against domestic violence is set forth in section 741.30(6).
The facts and circumstances to be alleged under subdivision (b)(1)(B) include those set forth in Florida Supreme Court Approved Family Law Form 12.980(d). The relief the court may grant in a temporary or permanent injunction against repeat violence is set forth in section 784.046(7), Florida Statutes.
Subdivision (b)(4) expands sections 741.30(2)(c)l and (2)(c)2, Florida Statutes, to provide that the responsibility to assist the petitioner may be assigned not only to the clerk of court but also to the appropriate intake unit of the court. Florida Supreme Court Approved Family Law Form 12.980(b) provides the form for a petition for injunction against domestic violence. If the custody of a child is at issue, a Uniform Child Custody Jurisdiction Act affidavit must be provided and completed in conformity with Florida Supreme Court Approved Family Law Form 12.902(d). If alimony or child support is sought a Financial Affidavit must be provided and completed in conformity with Florida Family Law Rules of Procedure Form 12.902(b) or 12.902(c).
Subdivision (c)(1)(A) expands chapter 95-195, Laws of Florida, and section 784.046(6)(a), Florida Statutes, to make the limitation of evidence presented at an ex parte hearing permissive rather than mandatory given the due process concerns raised by the statutory restrictions on the taking of evidence. Unlike traditional injunctions, under subdivision (c)(2), no bond will be required for the issuance of injunctions for protection against domestic or repeat violence. This provision is consistent with the statutes except that, unlike the statutes, it does not set a precise number of copies to be provided for service.
Subdivision (c)(3)(A) makes the procedure for service of a temporary order of injunction for protection against domestic violence and repeat violence consistent. This is intended to replace the differing requirements contained in sections 741.30(7)(b)3 and (7)(c)l and 784.046(8)(a)l, Florida Statutes.
Subdivision (c)(3)(B) makes the procedure for service of a permanent order of injunction for protection against domestic violence and repeat violence consistent. This is intended to replace the differing requirements contained in sections *185 741.30(7)(a)3 and (7)(c)l and 784.046(8)(c)l, Florida Statutes, and to specifically clarify that service of the permanent injunction by mail is only effective upon a party who is present at the hearing which resulted in the issuance of the injunction.
Subdivision (c)(4)(A) restates sections 741.30(5)(c) and 784.046(6)(c), Florida Statutes, with some expansion. This subdivision allows the court upon its own motion to extend the protection of the temporary injunction for protection against domestic or repeat violence for good cause shown, which shall include, but not be limited to, failure to obtain service. This subdivision also makes the procedures in cases of domestic and repeat violence identical, resolving the inconsistencies in the statutes.
Subdivision (c)(4)(B) makes the procedures in cases of domestic and repeat violence identical, resolving inconsistencies in the statutes. As stated in section 741.30(l)(e), Florida Statutes, in the event a subsequent cause of action is filed under chapter 61, Florida Statutes, any orders entered therein shall take precedence over any inconsistent provisions of an injunction for protection against domestic violence which addresses matters governed by chapter 61, Florida Statutes.
Subdivision (c)(5) implements a number of statutes governing enforcement of injunctions against domestic or repeat violence. It is intended by these rules that procedures in cases of domestic and repeat violence be identical to resolve inconsistencies in the statutes. As such, the proee-dures set out in section 741.31(1), Florida Statutes, are to be followed for violations of injunctions for protection of both domestic and repeat violence. Pursuant to that statute, the petitioner may contact the clerk of the circuit court of the county in which the violation is alleged to have occurred to obtain information regarding enforcement.
Subdivision (c)(7) expands sections 741.30(2)(c)l and (2)(c)2, Florida Statutes, to provide that the responsibility to assist a petitioner may not only be assigned to the clerk of court but also to the appropriate intake unit of the court. This subdivision makes the procedures in cases of domestic and cases of repeat violence identical to resolve inconsistencies-in the statutes.
COMMITTEE NOTE
1997 Amendment. This change mandates use of the injunction forms provided with these rules to give law enforcement a standardized form to assist in enforcement of injunctions. In order to address local concerns, circuits may add special provisions not inconsistent with the mandatory portions.

.The Family Court Steering Committee’s term expired June 30, 2002. By Administrative Order, Chief Justice Anstead merged two Supreme Court committees, the Family Court Steering Committee and the Children’s Court Improvement Committee, into the Steering Committee on Families and Children in the Court with a two-year term through June 30, 2004. See In re: Steering Committee on Families and Children in the Court, Fla. Admin. Order No. AOSC02-31 (Sept. 27, 2002) (on file with Clerk, Fla. Sup.Ct.). Nevertheless, because the petition was filed during the term of the former Family Court Steering Committee and its chair, Judge Raymond T. McNeal, any reference to the "committee” refers to the former Family Court Steering Committee. However, we have amended Florida Family Law Rule of Procedure 12.610(c)(2)(A) to reflect the change of committee.

. The comments in opposition came primarily from judges in circuits that utilize case management procedures; specifically, the Chief Judges of the Sixth Circuit, the Eleventh Circuit, the Twelfth Circuit, the Sixteenth Circuit, and the Twentieth Circuit, and Kathleen F. Dekker, Circuit Judge of the Second Judicial Circuit.

. However, the mediated agreement notes that Elaine New, Court Counsel for the Sixth Judicial Circuit Court, represented that although the Sixth Judicial Circuit Court would not abandon the position stated in its comment, it did not object to adding the proposed language to the commentary.

. See Fla. R. Fam. P. 12.610(b)(3) ("Upon the filing of a petition, the court shall set a hearing to be held at the earliest possible time.”).

. This data is derived from the Summary Reporting System (SRS) developed pursuant to section 25.075, Florida Statutes (2002), to provide the Office of State Courts Administrator (OSCA) with data to assist the Supreme Court in its role of management and oversight of the court system.

. Over the past two decades, all three branches of government have recognized the problem of domestic violence and have taken affirmative steps to address this issue. In Weiand v. State, 732 So.2d 1044 (Fla.1999), we observed:
Developments in all three branches of government since [1982] reflect the public’s concern regarding the plight of victims of domestic violence. For example, ... the executive branch has established a task force on domestic violence, whose purpose is the issuance of reports and recommendations which document "the extent of our awareness, and the responsiveness of our resources to battered women and their families.”
Since [1982] the Legislature has enacted numerous laws in response to the plight of the victims of domestic violence.... [T]he provisions relating to domestic violence injunctions have been substantially revised. The injunctive relief that the trial court can now grant includes awarding the petitioner the exclusive use and possession of the dwelling the parties share. See § 741.30(6)(a)2., Fla. Stat. (1997); ch. 84-343, § 10, at 1989, Laws of Florida. The legislature has made it illegal for any person under a final domestic injunction to possess a weapon. See § 741.30(6)(f), Fla. Stat. (1998). Law enforcement officers investigating alleged incidents of domestic violence are now required to notify the victim about the various resources of protection and the steps to take in pursuing prosecution. See § 741.29(1), Fla. Stat. (1997); ch. 84-343, § 12, at 1991, Laws of Fla.
Likewise, since [1982], the judiciary has focused judicial resources on the plight of victims of spousal abuse.... To further the goal of proper judicial response to incidents of domestic violence, this Court has been active in providing educational opportunities for judges throughout the state, and circuit and county court judges now have training available specifically addressing domestic violence and its related issues.
Id. at 1055-56 (footnotes and citations omitted).

. We note that although the mediated agreement contained the recommendation that the Court appoint a new committee consisting of representatives and individuals from a wide variety of employment and experiential backgrounds, we conclude that the Domestic Violence Subcommittee is well-suited to accomplish the tasks we have outlined above. Nevertheless, the subcommittee may wish to seek input from any of the individuals or groups listed in the mediated agreement.